IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 1:13-cr-25(3) |
| | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : **ORDER DENYING DEFENDANT'S** |
| FREDERICK BENTON, | : **MOTIONS FOR COMPASSIONATE** |
| | : **RELEASE** |
| Defendant. | : |
| | : |

This matter is before the Court on Defendant's Motion for Compassionate Release (Doc. 712) and Amended Motion for Compassionate Release (Doc. 713). The United States opposes Defendant's motions (Doc. 716). For the reasons set forth below, Defendant's motions will be **DENIED**.

## I. BACKGROUND

Defendant Frederick Benton III pled guilty, on March 6, 2014, to conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846. Pursuant to the statement of facts to which he admitted, Benton conspired with certain co-defendants to distribute heroin. (Doc. 354 at PageID 1143.) Specifically, Benton admittedly supplied heroin to his co-conspirators for distribution, and he acknowledged that he "personally distributed approximately 400 grams of heroin" in support of the conspiracy. (*Id.*) In addition, a search of Benton's residence also produced a firearm and ammunition. (Presentence Investigation Report ("PSR") ¶ 85.)

As part of his plea agreement, the Court dismissed the remaining counts pending against him. Benton's total offense level of 34 and his criminal history category of VI produced an advisory range under the United States Sentencing Guidelines ("USSG") of 262 to 327 months.

On April 14, 2015, the Court sentenced Benton to a 125-month period of incarceration followed by seven years of supervised release. (Doc. 573.)

Benton now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Docs. 712, 713). Although he is only 43 years old, Benton suffers from chronic high blood pressure and obesity which make him unusually susceptible to severe illness if he were to contract COVID-19 while incarcerated.[1] (Doc. 700 at PageID 2592.) Benton contends that his medical conditions constitute an "extraordinary and compelling reason" requiring his early release due to the COVID-19 pandemic. He also contends that his 70-year-old mother requires his care. (*Id.*)

Benton is currently incarcerated at FCI-Milan. His anticipated release date is March 24, 2022.

## II. LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). "The compassionate release provisions were first included in the Sentencing Reform Act of 1984 . . . to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). The 1984 provisions empowered only the Bureau of Prisons ("BOP") Director to file a motion for compassionate release, "[y]et the Director seldom wielded this significant power." *United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020). For instance, the BOP approved only 6% of 5,400 compassionate release applications received between 2013

---

[1] Benton provided no medical records in support of his purported conditions. However, for purposes of this Order only, the Court accepts as true his statements that he is obese and suffers from high blood pressure.

2

and 2017. *Id.* (referring to Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP)).

Frustrated that the Director acted so infrequently, Congress passed the First Step Act of 2018. "Section 603(b) of the First Step Act—titled 'Increasing the Use and Transparency of Compassionate Release'—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1105; *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Pursuant to § 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, under the current provisions, an incarcerated person can file for compassionate release after either exhausting the BOP's administrative process or thirty days after the warden received the compassionate release request, whichever is earlier. *Jones*, 980 F.3d at 1105. Once this administrative process has occurred, the Court employs a three step evaluation to determine: (1) whether "extraordinary and compelling reasons warrant" the requested sentence reduction;

3

(2) whether the reduction is consistent with applicable Sentencing Commission policy statements; and (3) whether, considering the applicable section 3553(a) factors,[2] the reduction is warranted under the particular circumstances of the case. *Id.* at 1108 (footnote added); 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement [USSG] § 1B1.13." *Jones*, 980 F.3d at 1111 (concluding that § 1B1.13 applies only where the BOP Director files the compassionate release motion). A court's decision to grant compassionate release is discretionary. *Id.* at 1106. A person seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Ebbers*, 432 F. Supp. 3d. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).

### III. ANALYSIS

In the case at bar, Benton exhausted the required administrative remedies by petitioning the warden for compassionate release at least thirty days prior to filing his motion. (Doc. 713 at PageID 2638.) Therefore, his motion is ripe for consideration on the merits. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

#### A. Extraordinary and Compelling Reason

"During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United*

---

[2] Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and promote respect for the law; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care or other treatment; (5) the kinds of sentences available; (6) the sentencing guideline range; (7) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct; and (8) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a).

*States v. Provost*, No. 3:18-cr-42, ___ F. Supp. 3d ___, 2020 WL 4274570, at *4 (E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release). In the case at bar, Benton has failed to establish either of these factors.

First, Benton alleges that he is obese and suffers from chronic hypertension. The Centers for Disease Control and Prevention ("CDC") lists *severe* obesity as a condition that places people at increased risk of severe illness from the virus that causes COVID-19 and chronic hypertension as a condition that *may* place one at increased risk. CENTERS FOR DISEASE CONTROL AND PREVENTION, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 5, 2021). However, Benton offers no evidence regarding the severity of his alleged medical conditions nor any evidence that he is particularly susceptible to serious illness from COVID-19. By way of comparison, the Court found an extraordinary and compelling reason for compassionate release where an inmate suffered from a long list of severe medical conditions, some of which were non-recoverable and rendered the inmate non-ambulatory. *United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (granting motion for compassionate release). Benton's asserted medical conditions simply do not rise to the same rare and extraordinary level. *See also United States v. Jenkins-Mills*, No. 3:17-CR-00025-TMKR-MRM-2, 2020 WL 6146418, at *4 (S.D. Ohio Oct. 20, 2020) (finding no extraordinary and compelling reason for compassionate release of 30-year-old defendant with medical condition of obesity).

Second, Benton has demonstrated no particularized risk of contracting COVID-19 at his facility. As of March 5, 2021, the Bureau of Prisons reported the following data from FCI-Milan: 0 inmates and 2 staff members with positive COVID-19 tests, 3 inmate COVID-19

5

deaths, and 256 inmates and 78 staff members recovered from COVID-19. BUREAU OF PRISONS, *COVID-19 Coronavirus*, htttps://www.bop.gov/coronavirus/ (last accessed March 5, 2021). While FCI-Milan has had a significant issue with COVID-19 infections (as at least 256 inmates and 78 staff members have recovered from it), there does not appear to be an unusual risk of infection at this time. Currently, no inmates and only two staff members are positive for COVID-19.

Finally, the Court has no information regarding Benton's vaccination status nor that of others at FCI-Milan. As COVID-19 vaccinations becomes more widely available to incarcerated people, the risk of infection will continue to decline. Under these circumstances, the Court concludes that no extraordinary and compelling reason exists for Benton's compassionate release.

### B. 18 U.S.C. § 3553(a) Factors

Even if the Court were to find that Benton's medical issues during the COVID-19 pandemic constituted an extraordinary and compelling reason for his release, the section 3553(a) factors do not support releasing him. Among the factors to be considered are the nature and characteristics of the Defendant's offense; the Defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the Defendant's conduct; the need to protect the public; the United States Sentencing Guidelines ("USSG") recommended sentence; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

In the case at bar, the nature and circumstances of this offense are very serious. Benton participated in a twenty-defendant drug conspiracy that created a visible increase in trafficking in crack cocaine and then heroin in the East Clifton Avenue area. (PSR ¶¶ 37–38.) While it is true that he did not join the conspiracy until approximately one month before the indictment,

6

Benton's role in the conspiracy was definitely not minor. He admitted that he "personally" supplied approximately 400 grams of heroin to the leader of the conspiracy for distribution. (Doc. 354 at PageID 1143.) In addition, he acknowledged utilizing three women as his couriers for heroin and drug proceeds. (*Id.*)

Benton's criminal history is extensive. Even without the "career offender" designation he received in this case, his criminal history score was VI, the highest score possible. (PSR ¶¶ 99–102, 104–127.)

As for the need for the sentence imposed to reflect the seriousness of the Defendant's conduct and to avoid unwarranted sentencing disparities, the statutory term of imprisonment here is not less than five nor more than 40 years. 21 U.S.C. § 841(b)(1)(B)(ii). According to the United States Sentencing Guidelines, Benton's total offense level of 34 and criminal history category of VI, results in a recommended sentence of 262 to 327 months in prison. (PSR ¶ 152.)

Finally, serious concerns remain regarding the need to protect the public from the Defendant's potential future crimes. Benton, who was 37 years old at sentencing, has no employment history and appears to have supported himself primarily through illegal activities. (PSR ¶ 149.) While his health concerns may place him at higher risk if he contracts COVID-19, his alleged obesity and high blood pressure are not so serious that they limit his ability to commit future crimes. Indeed, at the time of his PSR, Benton had previously been shot twice, stabbed during a domestic dispute, and had a body mass index in the obese range. (PSR ¶¶ 142–143.) None of these medical conditions kept him from committing the instant serious offense.

Having reviewed the section 3553(a) factors, the Court is mindful that Benton is more than just the sum of his prior criminal activities. Indeed, the Court remembers him well. Benton had a difficult childhood, and he is the father of five children. His oldest son spoke effectively

on his behalf at sentencing, and the Court was moved by Benton's efforts to provide help and protection to others in the community with difficult backgrounds. For that reason, the Court rejected the recommended sentence of 262 months and sentenced Benton to incarceration for 125 months instead. However, the Court cannot disregard the fact that the section 3553(a) factors weigh heavily against compassionate release at this time.

### IV. CONCLUSION

After considering the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in this case. Accordingly, Defendant's Motion for Compassionate Release (Doc. 712) and Amended Motion for Compassionate Release (Doc. 713) are hereby **DENIED**.

**IT IS SO ORDERED.**

*Susan J. Dlott*
Judge Susan J. Dlott
United States District Court